**WEST VALLEY CITY, Plaintiff,**

v.

**Frank Ronald BORREGO, Defendant and Appellant,**

**Fifth Circuit Court, Respondent.**

No. 870360–CA.

Court of Appeals of Utah.

March 30, 1988.

Ronald E. Kunz, Cook & Wilde, Midvale, for defendant and appellant.

Gregory J. Sanders, Kipp and Christian, P.C., Salt Lake City, for respondent.

Keith Stoney, West Valley City Prosecutor, West Valley City, for plaintiff.

## OPINION

Before GARFF, JACKSON and ORME, JJ. (On Law and Motion).

PER CURIAM:

Appellant Frank Ronald Borrego was convicted in circuit court of possession of drug paraphernalia, disorderly conduct, terroristic threats and public intoxication. Borrego represented himself at trial, but requested the circuit court to appoint counsel to represent him at sentencing. He appeared for sentencing with court-appointed counsel on July 16, 1987. Borrego was then in custody due to a commitment from another court. He was placed in the jury box with a microphone in front of him, while his counsel addressed the court from a podium in the middle of the courtroom.

During the sentencing proceeding, defendant's counsel made a motion for a new trial. The court denied the motion. Counsel then indicated he was not aware of any reason why sentencing should not proceed. Borrego indicated that he wished to speak with counsel. The court responded, "Just a second, Mr. Borrego," and spoke briefly with counsel. The following interchange then took place:

THE COURT: I'll allow you to conference with Mr. Borrego, since he has his hand raised. Go ahead, sir.

MR. KUNZ: Thank you.

MR. BORREGO: How about lack of due process?

MR. KUNZ: Shhh, Okay.

MR. BORREGO: Goddamit [sic.], I was kept in a goddam holding cell four-and-a-half hours while people went to lunch and came back, and he went to lunch and come back, and goddamit [sic.], I didn't have lunch.

MR. KUNZ: Shhh.

(Conference off the record between counsel and his client.)

MR. BORREGO: Goddamit [sic.]. I want this goddam judge dismissed for prejudice.

Borrego's counsel then argued for a new trial based on a denial of due process as a result of defendant's alleged treatment on the date of the trial. Counsel argued that other defendants awaiting trial were not kept in a holding cell. The court responded, resulting in the following interchange:

THE COURT: ... As you noticed within your conversation with Mr. Borrego, he used profanity which I find extremely offensive—

MR. BORREGO: I find your court profane.

THE COURT: And as you see he is acting in the manner that he's currently acting in, is in essence the same way on which he was acting on that particular day.

MR. BORREGO: It's not an act.

THE COURT: When a defendant acts in that particular manner, of course, in order to continue the Court's business in an orderly manner, we take them out of the courtroom. Now, I'm confident that that was one of the reasons why Mr. Borrego was held in the holding cell versus sitting in the jury box as he is right now.

MR. BORREGO: You know that's a lie.

At one point defendant's counsel inquired whether Mr. Borrego's comments were being placed on the record. The court replied:

THE COURT: Unfortunately, the microphone is right there and we are on the record, and I think—

MR. BORREGO: Good.

THE COURT: —it's proper for everything to be on the record, and unless you don't—unless there's some valid reason for it not to be.

Counsel made no objection to the inclusion of the comments in the record.[1]

Later in the proceedings, Borrego made "a motion for prejudice on this judge," which was then adopted by his counsel. The motion was denied and sentencing proceeded. The court admonished Borrego not to interrupt. Borrego, however, continued to make outbursts. Upon being advised that the court had reviewed a presentence report prepared in November of 1986 on a driving under the influence conviction, Borrego made the following comments:

MR. BORREGO: The constitution of the —previous record should have no bearing on this case; this didn't involve traffic, it didn't involve driving, it didn't involve intoxicated driving, accident while intoxicated, et cetera. He is using my past to convict me of something. I think that's unconstitutional, isn't it?

MR. KUNZ: Okay I—

MR. BORREGO: It's just like him saying, did I make outbursts? I'm damned angry, yes, I am; because I didn't get lunch, because I've been treated like a goddam tramp, and I don't like it.

At the conclusion of sentencing, the court found Borrego in contempt based on his outbursts and use of profanity. The court further indicated: "I'm satisfied that his conduct is designed to prevent and interfere with the orderly process of this particular Court." Borrego was sentenced to 30 days in jail for the contempt.

Immediately after the court's pronouncement of the sentence, the following exchange took place:

THE COURT: Do you have any questions about that, Mr. Kunz?

MR. KUNZ: I have none, your Honor.

MR. BORREGO: I do, your Honor.

THE COURT: All right. Mr. Kunz, one other brief matter, just so that you're aware of this as well. Additionally, in order—the finding of contempt and the issuing of the 30-day commitment, the Code also requires me to enter and make written findings. I will in fact be doing that and forwarding a copy of that— those findings to you in writing. Do you understand that, sir?

MR. KUNZ: I understand, your Honor.

Your Honor, I believe I understand the Court's sentence. My client has indicated that he has a question which I'll discuss with him out in the hall. If there's further clarification that I need after talking with him, if I'm not able to satisfy his questions, then I'll be back to—.

THE COURT: That's fine, sir.

The record reflects no further comments and no objections by defense counsel.

On July 16, 1987, the court entered written findings and an order of contempt pursuant to Utah Code Ann. § 78–32–3 (1987). The findings provide, in relevant part:

During the course of sentencing Defendant became loud and boisterous, using profanity which tended to interrupt the due course of the sentencing hearing. The Defendant was requested by this court to refrain from interrupting the court while the sentence was being pronounced, however, Defendant failed to honor this request and responded with loud, boisterous profanity, demonstrating

---

1. In so stating, we in no way intimate that such an objection would have been well-taken. *See Briggs v. Holcomb*, 740 P.2d 281, 283 (Utah Ct. App.1987).

contemptuous or insolent behavior toward this Court. The above described behavior continued repeatedly during the course of the sentencing hearing.

On appeal, Borrego challenges only the finding of contempt and the sentence thereon and does not challenge the conviction or sentence on the underlying offenses.[2]

■ Borrego first contends that his comments to the court were protected by his constitutional rights of free speech and to appear and defend in person and by counsel. Next, he contends that the court was required to give Borrego a warning that his conduct was contumacious before making the finding of contempt. Finally, he claims that the record is devoid of any evidence that Borrego's conduct was disruptive of the court's proceedings. The latter claim is a challenge to the sufficiency of the evidence to support the trial court's finding of contempt.

The authority of a court to punish summarily a contempt "committed in the immediate view and presence of the court" is provided in Utah Code Ann. § 78–32–3 (1987). The acts or omissions constituting contempt are enumerated in Utah Code Ann. § 78–32–1 (1987), and include, in relevant part:

(1) Disorderly, contemptuous or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding.

(2) Breach of the peace, boisterous conduct or violent disturbance, tending to interrupt the due course of a trial or other judicial proceeding.

. . . .

See also Utah Code Ann. §§ 78–7–17 and –18 (1987) (a judicial officer may punish for contempt, in the cases provided by law, "to preserve and enforce order in his immediate presence, and in proceedings before

him, when he is engaged in the performance of official duty").

In support of his constitutional claims, Borrego appears to contend that his statements, regardless of content, cannot form the basis for a contempt citation because the comments were directed to counsel, and it was necessary for him to address counsel from across the room. This contention is not supported by the record, which reflects that only in the first instance could the comments have arguably been directed at counsel, and also reflects that the defendant apparently did not heed the warnings of his counsel to lower his voice. Moreover, many of the comments were clearly directed at the court, including "I find your court profane" and "You know that's a lie." The record leaves the unmistakable impression that Borrego intended his comments to be heard by the court and included in the record. Borrego provides no direct support for the contention that his conduct constituted protected speech.

Borrego further contends that his rights to freedom of speech were improperly restricted by the trial court. While acknowledging the power of Utah judges to punish "disorderly, contemptuous or insolent" behavior tending to interrupt court proceedings, Borrego contends that the record does not support a finding that he intended to obstruct the proceedings and argues that the "mere use of profanity in the courtroom should not constitute contempt of court, unless such profanity is used to insult or degrade the court, or is used with the intent to obstruct the judicial process." Borrego argues that the record contains no evidence to indicate his intent to disrupt the proceedings. "To mount a successful attack on the trial court's findings of fact,[3] an appellant must marshal all the evidence in support of the trial court's findings and then demonstrate that even viewing it in

---

**2.** Accordingly, the Fifth Circuit Court is the real party in interest aligned against Borrego. That court has filed a brief in opposition to Borrego's appeal. Plaintiff West Valley City takes no position on the appeal.

**3.** The trial court made no written finding as to intent and Utah Code Ann. §§ 78–32–1 and –3

(1987) contain no specific intent requirement. We need not reach the issue of the required intent for contempt, however, because the court made an oral finding on the record as to intent. See Utah R.Civ.P. 52; Hansen v. Hansen, 736 P.2d 1055, 1058 (Utah Ct.App.1987).

the light most favorable to the court below, the evidence is insufficient to support the findings." *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985); *Fitzgerald v. Critchfield*, 744 P.2d 301, 304 (Utah Ct.App.1987). Appellant has wholly failed to sustain this burden. Moreover, the record contains ample evidence from which the trial court could conclude that Borrego intended to disrupt the proceedings.

 Borrego's second contention is that the court was required to warn him that his conduct was contumacious before a finding of contempt could be made. While admitting that the court indicated that it found profanity in the courtroom extremely offensive, defendant asserts that the statement was not an effective warning because it was "made to Mr. Borrego's attorney and not to Mr. Borrego directly, and no direction was given to counsel to warn Mr. Borrego." The assertion is clearly without merit. The record of proceedings is sufficient to establish that Borrego was made aware that his conduct was inappropriate and that he was represented by competent counsel who was aware of proper courtroom conduct. Finally, Borrego's reliance on *Eaton v. City of Tulsa*, 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974) is misplaced. *Eaton* was a per curiam decision holding that a trial judge's finding of contempt based solely on the use of an expletive in response to cross-examination could not be affirmed. The decision specifically noted that the expletive was not directed toward the court and that there was no indication in the record of loud or boisterous conduct or any attempt to prevent the court from carrying on its duties. The factual situation is markedly different from that presented by the transcript of proceedings in the present case.

Borrego further contends that the findings are insufficient in that they do not detail how the sentencing "was delayed or unduly interrupted" by his comments. Utah Code Ann. § 78–32–3 (1987) requires the court to recite the facts as occurring "in [the court's] immediate view and presence" that support the judgment of contempt. The court in this case found, in relevant part, that defendant "became loud and boisterous, using profanity which tended to interrupt the due course of the sentencing hearing." In reviewing a challenge to a trial court's factual findings, we apply a "clearly erroneous" standard. That standard requires that "if the findings ... are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made, the findings ... will be set aside." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). We conclude that the findings of the trial court are supported by the weight of the evidence and that they adequately support the judgment of the court. The judgment of contempt is affirmed.

GARFF, JACKSON and ORME, JJ., concur.