MOUNTAIN STATES BROADCASTING COMPANY, a corporation, and Dan Lacy, an individual, Plaintiffs, Appellants and Cross–Respondents,

v.

Sterrett NEALE and Neale Broadcast Alliance, Defendants, Respondents and Cross–Appellants.

No. 880192–CA.

Court of Appeals of Utah.

June 20, 1989.

Rehearing Denied July 20, 1989.

---

1. *Codianna v. Morris,* 660 P.2d 1101, 1104–05 (Utah 1983).

2. *Id.; see State v. West,* 765 P.2d 891, 897–902 (Utah 1988) (Hall, C.J., dissenting).

Don R. Petersen, Leslie W. Slaugh, Provo, for plaintiffs, appellants and cross-respondents.

Stephen L. Henriod, Marilynn P. Fineshriber, Salt Lake City, for defendants, respondents and cross-appellants.

## OPINION

Before DAVIDSON, GREENWOOD, and ORME, JJ.

ORME, Judge:

This appeal arises from a dispute over the purchase of two radio stations and their assets. Mountain States Broadcasting Company, the corporate purchaser, and Dan Lacy, Mountain States' president and guarantor of the promissory note given for the purchase price, commenced this action seeking a declaration of their entitlement to certain offsets against the note balance otherwise due. Neale Broadcast Alliance ("NBA"), the corporate seller, and Sterrett Neale, NBA's president and guarantor of the seller's performance, were named as defendants. NBA counterclaimed for the entire note balance. Both parties successfully secured certain aspects of the relief they sought, but now appeal various decisions of the trial court. We affirm in substantial part, but reverse and remand in limited respects.

### FACTS

NBA owned and operated radio stations KONI and KTMP in Utah County. On November 21, 1981, NBA agreed to sell these stations to Mountain States, and the parties entered into an Asset Purchase Agreement. In June 1982, the sale transaction closed and Mountain States delivered a promissory note for the deferred portion of the purchase price to NBA. The purchase agreement provided that NBA warranted "all of the personal property listed in Schedule 2 which is presently in active use in the operation of the Stations will be in good repair and working order unless otherwise noted" on the schedule. Following the closing, Dan Lacy inspected the premises of both radio stations and the personal property found thereon. Lacy compiled a list of items mentioned on Schedule 2 that were, in his opinion, either missing or inoperable. Accordingly, Mountain States claimed a substantial offset against the note balance.

After making two small payments on the note, Mountain States and Lacy brought this action seeking a judicial determination of their entitlement to the claimed offsets for the allegedly missing or inoperable equipment. Mountain States deposited a check for $89,587.16, the balance then due on the note, with the court.[1] NBA dis-

---

1. At a subsequent hearing convened for another purpose, it was agreed that the trial court would return this check to Mountain States, which would then immediately pay $59,587.16 to NBA and deposit the remaining $30,000 to an inter-

puted the propriety of any offset and counterclaimed for the entire amount due and owing on the note, including interest.

Following a bench trial, the court found that the items claimed to be missing were either excluded from the sale or had been found, so that "no material items" were missing. However, the court found that a "control design brain" and two carousels used in the operation of the stations were not in "good repair and working order" at the time of transfer. Accordingly, the court awarded Mountain States an offset of $6,000, the approximate amount the court concluded was necessary to restore those items to the condition warranted.

NBA was awarded a judgment on its counterclaim for the entire amount due on the note, less the offset. Relying on language in the promissory note, the court concluded that interest due on the unpaid balance should be compounded monthly. Finding each side had prevailed to some extent, the trial court also awarded both sides their attorney fees in full.

On appeal, Mountain States claims: 1) It is entitled to further offsets against the purchase price to compensate for missing or inoperable equipment or to reflect the proper measure of damages; 2) the court erred in compounding the interest on unpaid interest installments; and 3) the court erred in awarding both sides attorney fees because only plaintiffs were "the prevailing party" as contemplated by the purchase agreement.[2]

NBA cross-appeals, challenging the propriety of any offset and claiming that they, not plaintiffs, are entitled to attorney fees as "the prevailing party."

## MISSING AND INOPERABLE EQUIPMENT

The parties' claims concerning the proper offset amount are essentially a challenge to the trial court's findings of fact. Specifically, Mountain States argues the findings concerning the amounts attributable to missing and inoperable equipment are not supported by the evidence but are instead significantly higher. NBA argues the evidence does not support the findings in support of even a $6000 offset.

■ In order to challenge a trial court's findings of fact, a party "must marshal the evidence *in support* of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *In re Bartell,* 776 P.2d 885, 886 (1989) (emphasis added) (quoting *State v. Walker,* 743 P.2d 191, 193 (Utah 1987). *See also, e.g., Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985); *Henderson v. For–Shor Co.,* 757 P.2d 465, 468 (Utah Ct.App.1988). Appellants often overlook or disregard this heavy burden. When the duty to marshal is not properly discharged, we refuse to consider the merits of challenges to the findings and accept the findings as valid. *See, e.g., Deeben v. Deeben,* 772 P.2d 972, 972 n. 1 (Utah Ct.App.1989); *Demetropoulos v. Vreeken,* 754 P.2d 960, 963 (Utah Ct.App.1988); *West Valley City v. Borrego,* 752 P.2d 361, 364–65 (Utah Ct.App.1988); *Fitzgerald v. Critchfield,* 744 P.2d 301, 304 (Utah Ct.App. 1987); *Harker v. Condominiums Forest Glen, Inc.,* 740 P.2d 1361, 1362 (Utah Ct.App.1987). Here, the parties have done an admirable job of marshaling the evidence. Indeed, the benefits of the require-

est-bearing account pending resolution of the dispute.

**2.** Mountain States also claims the trial court erred by denying its claim for consequential damages relating to extra payroll expense incurred by reason of the control design brain's "inoperable" condition. We agree with the trial court that Mountain States failed to meet its burden of proving that, but for the condition of the control design brain, those expenses would not have been necessary.

Mountain States also objects to the trial court's post-trial amendment of the judgment to permit disbursement of the deposited funds to Sterrett Neale personally rather than directly to NBA. The court granted the motion to amend the judgment ex parte, apparently regarding this modification as merely clerical in nature. While we agree that the court should have allowed Mountain States sufficient time to respond to the motion, its failure to do so is harmless error in light of our decision favorable to defendants.

ment are demonstrated by the fact that Mountain States, after its careful review of the evidence, candidly concedes the adequacy of the evidence to support the findings as to all but five of its original claims for missing or inoperable equipment. Furthermore, Mountain States' five remaining challenges are well supported by precise and thorough references to record evidence supporting the particular finding as well as evidence supporting Mountain States' challenge. Accordingly, we turn to the merits of those challenges.

After carefully reviewing the marshalled evidence, we conclude the trial court's factual findings regarding the alleged *missing* equipment are sufficiently supported by the evidence, with only two minor exceptions. We have been shown no evidence on which the trial court could have relied in denying the claims for the missing oscilloscope and a noise and distortion meter. Thus, we hold on the undisputed evidence in the record that Mountain States is entitled to additional offsets in the amount of $120 for the oscilloscope and $377.80 for the noise and distortion meter.

■ Additionally, both Mountain States and NBA challenge the trial court's findings supporting its award of damages to Mountain States for *inoperable* equipment. The evidence readily supports the majority of the findings in this regard, but those concerning the control design brain and two carousels present closer questions. Mountain States claims the $3,000 award based on the cost to repair the control design brain is insufficient as the evidence demonstrates that the brain is beyond repair. Thus, Mountain States contends replacement cost is the appropriate measure of its damages. On the other hand, NBA contends the evidence demonstrates the control design brain and carousels were as

warranted and the court should not have awarded any such damages to Mountain States.

The court received a wide range of testimony regarding the condition of the control design brain and carousels. However, the evidence does not compel a finding that the equipment was beyond repair, as Mountain States contends, nor that it was in the condition warranted at the time of sale, as NBA contends. The middle ground taken by the trial court, namely that this equipment was not as warranted but could be repaired, has ample evidentiary support. Of course, in view of the divergent positions taken by the parties at trial, the evidence concerning repair costs is somewhat sparse. It appears that in formulating its ultimate award, the court relied on an evaluation report prepared by an electronics technician suggesting approximate repair costs.[3] The award is consistent with the estimates contained in the report. Thus, we find sufficient evidence to support the court's award to Mountain States of a $6000 offset for equipment in disrepair, and we affirm it.

## INTEREST

Mountain States next contends the trial court erred in awarding *compound* interest to NBA on the unpaid interest installments. *See generally* 45 Am.Jur.2d *Interest and Usury* § 76 (1969) ("Compound interest means interest on interest, in that accrued interest is added periodically to the principal, and interest is computed upon the new principal thus formed; it is to be distinguished from the mere allowance of interest on overdue installments of interest, which is not strictly compound interest."). The court relied on the following provision in the promissory note as the basis for its award:

---

**3.** Hoping to persuade us to adopt replacement cost as the measure of its damages, Mountain States argues this document should not be considered by us because it was not admitted as evidence of repair costs. However, our attention is drawn to no indication in the record that the court admitted the document for a limited purpose, nor to any objection by Mountain States to the document's admission for particular purposes. In view of our affirmation of repair cost as the appropriate measure of damages in this case, we note that if this evidence were disregarded, this offset in favor of Mountain States would have to be set aside altogether. No other evidence in the record bears on the cost to *repair* this equipment.

This Note shall bear interest upon the unpaid principal balance hereof from the date hereof until paid, at a rate of ten percent (10%) per annum. Should interest not be paid when due, it shall thereafter bear like interest as the principal.

■ In Utah, compound interest is not favored by the law. *Watkins & Faber v. Whiteley*, 592 P.2d 613, 616 (Utah 1979) (per curiam). The court's award here can be affirmed only if we conclude the parties expressly agreed to compound interest by the terms of the above provision. In this regard, we observe that the note does not explicitly provide that interest on unpaid interest should be compounded monthly.[4] Instead, it provides that unpaid interest will bear interest "as the principal," which bears simple interest. Therefore, we hold NBA is only entitled to simple interest at a rate of 10% per annum on the unpaid interest installments, and we remand to the trial court to recalculate the interest due.[5]

## ATTORNEY FEES

Mountain States and NBA also challenge the trial court's award granting both sides their attorney fees based on the attorney fee provision in the Asset Purchase Agreement.[6] That provision provides in part, with our emphasis, as follows:

In the event of commencement of suit by either party to enforce the provisions of this Agreement, *the prevailing party* shall be entitled to receive attorneys' fees and costs as a court may adjudge reasonable in addition to any other relief granted.

■ Attorney fees are awardable only if provided for by statute or contract and, if by contract, only as the contract allows by its terms. *See, e.g., Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). As the award of fees here is based on a contract, we must determine if the trial court properly concluded that both parties "prevailed" and were therefore entitled to fees under the contract. Both sides argue the fee provision mandates that there can be only one "prevailing party," an interpretation consistent with the plain meaning of the provision, particularly its reference in the singular to "*the* prevailing party." Of course, both claim to be that party.

■ Typically, determining the "prevailing party" for purposes of awarding fees and costs is quite simple. Plaintiff sues defendant for money damages; if plaintiff is awarded a judgment, plaintiff has prevailed, and if defendant successfully defends and avoids an adverse judgment, defendant has prevailed. However, this simple analysis cannot be employed here be-

---

**4.** *Cf.* 28 U.S.C.A. § 1961(b) (1989) (expressly providing for interest "compounded annually").

**5.** A close reading of *Jensen v. Lichtenstein,* 45 Utah 320, 145 P. 1036 (1915), relied on by NBA, reveals the Court's intention that the unpaid interest earn interest, but it is not clear it intended the interest upon the interest to bear interest. *Id.* 145 P. at 1041. The interpretation favoring simple interest is supported by the overall result in *Jensen.* The interest payments in that case were $175 per month. The Court said:

When therefore the several sums of $175, with interest thereon at the rate of 8 per cent per annum from the date they severally became due until the judgment was entered as aforesaid, are all added to the principal, the total amount is the amount for which judgment should be entered.

*Id.* If the Court had intended the missed interest installments to bear compounded interest, these particular installments would have been added to the principal once overdue, rather than making sure they existed as "several sums of

$175" and waiting until judgment to add them to the principal. Furthermore, the provision in *Jensen* is distinguishable from the provision at issue here.

**6.** There are actually three attorney fee provisions in the record. The individual guaranty of Dan Lacy provides that Lacy will "reimburse Neale for all costs and expenses including attorney's fees incurred in the enforcement of this guaranty." Since the trial court had no occasion to award NBA a judgment on the guaranty, we need not consider this provision.

The promissory note also provides that "[t]he undersigned [Mountain States] promises to pay costs of collection and attorneys' fees in reasonable amount if default is made in the payment of this Note." Because NBA is the party due fees under this provision and also, as we will explain, the "prevailing party" under the fees provision in the purchase agreement, we need not separately consider the note provision, which is merely duplicative given the posture of this case.

cause both plaintiff and defendant obtained some monetary relief against the other.[7] Our review of the relevant case law convinces us that under the provision at issue, there can be only one prevailing party even though both plaintiff and defendant are awarded money damages on claims arising from the same transaction.[8] *See Lawrence v. Peel*, 45 Or.App. 233, 607 P.2d 1386, 1392 (1980); *Marquam Inv. Corp. v. Myers*, 35 Or.App. 23, 581 P.2d 545, 548–49 (1978). *See also Checketts v. Collings*, 78 Utah 93, 1 P.2d 950, 953 (Utah 1931) ("There can be but one prevailing party in an action at law to recover a money judgment.").[9] *But see Trayner v. Cushing*, 688 P.2d 856, 858 (Utah 1984) (per curiam) (both sides entitled to award of some attorney fees where relevant agreement did not employ "prevailing party" phraseology). We hold that in the present circumstances the party in whose favor the "net" judgment is entered must be considered the "prevailing party" and is entitled to an award of its fees. *See, e.g., Ocean West Contractors, Inc. v. Halec Constr. Co.*, 123 Ariz. 470, 600 P.2d

1102, 1105 (1979); *Trollope v. Koerner*, 21 Ariz.App. 43, 515 P.2d 340, 344 (1973); *Moss Constr. Co. v. Wulffsohn*, 116 Cal. App.2d 203, 253 P.2d 483, 485 (1953); *Szoboszlay v. Glessner*, 233 Kan. 475, 664 P.2d 1327, 1333–35 (1983); *E.C.A. Envtl. Management Servs., Inc. v. Toenyes*, 208 Mont. 336, 679 P.2d 213, 218 (1984). *See also* Annotation, *Who Is The "Successful Party" Or "Prevailing Party" For Purposes Of Awarding Costs Where Both Parties Prevail On Affirmative Claims*, 66 A.L.R.3d 1115 (1975).

Based on the foregoing, we conclude that NBA, in view of its net recovery of approximately $85,000, is the sole "prevailing party" as a matter of law. Accordingly, we reverse the award of fees to Mountain States. Even though we affirm NBA's entitlement to an award of attorney fees, we must reverse the award as made and remand for a determination of a *reasonable* fee.[10] *See Moss Constr. Co.*, 253 P.2d at 484–85.

**7.** The determination of a "prevailing party" becomes even more complicated in cases involving multiple claims and parties, *see Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 733 P.2d 652 (Ct.App.1986); the granting of non-monetary relief to one or more parties, *see Watson Constr. Co. v. Amfac Mortgage Corp.*, 124 Ariz. 570, 606 P.2d 421, 435–36 (Ct.App. 1979); *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 575 P.2d 869, 879 (1978); and where the ultimate award of money damages does not adequately represent the actual success of the parties under the peculiar posture of the case. *See Owen Jones & Sons, Inc. v. C.R. Lewis Co.*, 497 P.2d 312, 313–14 (Alaska 1972). These cases demonstrate the need for a flexible and reasoned approach to deciding in particular cases who actually is *the* "prevailing party."

**8.** It appears that where both plaintiff and defendant recover in the same action but the counterclaim does not arise from the same transaction as the plaintiff's claim, both parties may be considered to have prevailed and, therefore, to be entitled to a portion of their fees. *See, e.g., Elder v. Triax Co.*, 740 P.2d 1320, 1321–22 (Utah 1987); *Moran v. Lewis*, 131 Conn. 680, 41 A.2d 905, 905 (1945). However, this rule would not apply here because Mountain States' claim and NBA's counterclaim arose from the same transaction.

**9.** We note the limited reliance we purposefully place on *Checketts*. While we agree that there

can be but one "prevailing party" in an action such as this, we think that the result reached in *Checketts,* to the effect that a defendant who defeats a plaintiff's claim, but also loses on its counterclaim, is the "prevailing party" entitled to fees as a matter of course, 1 P.2d at 953, makes little sense and is probably no longer valid.

**10.** The trial court in this case, in awarding fees to both sides, simply awarded each the total amount of its accumulated billing statements. On remand, the trial court's calculation of a *reasonable* fee should comport with *Dixie State Bank v. Bracken*, 764 P.2d 985, 989–90 (Utah 1988). Of course, a reasonable fee will compensate NBA only for those fees necessarily incurred in resolution of issues in NBA's favor, and should not include fees relating to the issues resolved in Mountain States' favor. *See Stacey Properties v. Wixen*, 766 P.2d 1080, 1085 (Utah Ct.App.1988) (party entitled to attorney fees "was entitled to attorney fees for the claims on which it was successful"). *Cf. Graco Fishing & Rental Tools, Inc. v. Ironwood Exploration, Inc.*, 766 P.2d 1074, 1079–80 (Utah 1988) (suggesting need to "differentiate between the time spent on the successful claim[s] and the time spent on unsuccessful claims" and propriety of awarding fees only for the former); *Trayner v. Cushing*, 688 P.2d 856, 858 (Utah 1984) (per curiam) ("[A] party is entitled only to those fees attributable to the successful vindication of contractual rights within the terms of their agreement.").

Finally, plaintiffs argue that they acknowledged owing a portion of the debt both before the action was commenced and, subsequently, at an early stage of the action. *See* note 1, *supra.* Additionally, they note that they deposited the entire sum due into court. Accordingly, plaintiffs contend NBA cannot be deemed to have "prevailed," at least as to the amount never seriously contested by Mountain States. We cannot agree, and hold that NBA has "prevailed" to the extent of its entire recovery, including the amount Mountain States voluntarily paid after NBA filed its counterclaim. *See Highland Constr. Co. v. Stevenson,* 636 P.2d 1034, 1038 (Utah 1981) (for purposes of an award of fees to the "prevailing party," sums voluntarily paid during the course of the action are treated as if obtained by judgment). *Cf. Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) (a party has "prevailed" for purposes of awarding fees under 42 U.S.C. § 1988 even if resolution of its claim is through settlement).

## CONCLUSION

The trial court's $6,000 award to Mountain States as an offset for missing or inoperable equipment is affirmed, but must be increased by $120 for the missing oscilloscope and $377.80 for the missing noise and distortion meter. The court's award of compound interest is reversed. Finally, the court's award of attorney fees to both parties is reversed. On remand, then, the trial court must determine and enter an award of reasonable attorney fees in NBA's favor, increase the offset in favor of Mountain States as indicated, and recalculate interest to award NBA only simple interest on the interest installments not paid when due. Additionally, NBA, while not enjoying total success on this appeal, is clearly the "prevailing party," and is entitled on remand to an award of its attorney fees reasonably incurred on appeal.[11] *See Management Servs. v. Development Assocs.,* 617 P.2d 406, 408–09 (Utah 1980).

11. Of course, the point made in footnote 10 about the recoverable aspects of NBA's overall attorney fee applies with equal force to the

## ON PETITION FOR REHEARING

Mountain States seeks our reconsideration of the attorney fees issue, particularly our conclusion that it was not the "prevailing party" in proceedings before the district court. Although the petition for rehearing is otherwise without merit and is denied, Mountain States identifies an oversimplification in our opinion which merits comment and clarification.

The thrust of Mountain States' petition is that it must be held the prevailing party since it only claimed all along that it was entitled to some offset, in an amount to be proven, and ultimately proved it was entitled to an offset. Conversely, Mountain States argues, NBA was the loser because it contended no offset was in order and it was proven wrong. Mountain States suggests that the absurdity of our reliance on the "net judgment" rule in a case like this is shown by the fact that if it had proven offsets totalling even $1.00 less than the amount otherwise due under the note, despite a near-total victory for Mountain States the net judgment would still be in favor of NBA and strict application of the net judgment rule would leave NBA the prevailing party.

Mountain States' point is well-taken. On the other hand, carrying its own position to an equivalent extreme works an equally untenable result: If Mountain States had shown its entitlement to an offset of only $1.00, under its view it would be the prevailing party since it claimed an offset in an amount to be proven and proved one.

We recognized in footnote 7 of our opinion and here emphasize "the need for a flexible and reasoned approach to deciding in particular cases who actually is *the* prevailing party." Consistent with that view, we point out that nothing in our opinion should be taken to suggest that the net judgment rule can be mechanically applied in all cases, although it will usually be at least a good starting point.

reasonable fee awardable on remand for attorney services rendered on appeal.

In this case, we remain convinced that application of the net judgment rule does not distort the relative success of the parties at trial, as seen from two additional perspectives implicit in Mountain States' petition.[12]

Taking a narrower focus, the real dispute centered on the $30,000 held in court after the initial disbursement to NBA. Mountain States fought long and hard to show that it was entitled to at least that amount in offsets. NBA claimed it was entitled to the entire fund, pursuant to its note, since Mountain States was not entitled to any offset. Total victory for Mountain States would have been its proving entitlement to all $30,000. Total victory for NBA would have been its proving Mountain States was entitled to nothing. A "draw" would have been a decision dividing the $30,000 equally. As it happened, $6,000 was awarded, in effect, to Mountain States and $24,000 was awarded to NBA.[13] NBA walked away with four times what Mountain States did. On the most important single issue, NBA persuaded the trial court that the "brain" was not beyond repair. Mountain States wanted between $13,000 and $35,000 to replace the brain; it got only $3,000 to fix it. Viewed from this vantage point, NBA must surely be deemed the prevailing party.

Taking a more expansive view, comparative victory still belongs to NBA. In this regard, Mountain States notes that our application of the net judgment rule does not take account of a claim NBA unsuccessfully asserted for $50,000 in punitive damages. Working this claim into the analysis, NBA sought approximately $90,000 on its note and $50,000 in punitive damages, for a total of $140,000. It recovered approximately $85,000, or roughly 60% of what it sought. While Mountain States was less specific in its pleadings concerning amounts, at a minimum Mountain States attempted to recover the following amounts from NBA: Missing equipment, $11,500.73; inoperable equipment, $40,-566.71; United Press International claim, $9,510.50; additional payroll expenses, $3,355; and the loss on the resale of one radio station, $5,500, for a total of approximately $70,000. It recovered approximately $6,000.00, or about 9% of what it sought. Even if the amount paid over to NBA early in the course of the litigation is disregarded, while it becomes a closer call NBA still emerges as the comparative winner. In other words, if we treat NBA as claiming $30,000 still due on the note and $50,000 in punitive damages, for a total of $80,000, the $24,000 it then recovered represents 33% of what it sought, which appreciably exceeds the 9% recovery realized by Mountain States.

Viewed in any sensible way, NBA prevailed below and was entitled to the award

---

**12.** We reject two additional approaches urged by Mountain States. First, Mountain States argues that NBA did not effectively accelerate the balance due under the note so that only unpaid installments, not the entire balance, can properly be deemed the subject of NBA's claim. Throughout this litigation, the parties and the trial court treated the note as having been accelerated by NBA, rendering the entire balance due. The fact that Mountain States deposited the entire balance into court, rather than merely installments as they came due, is consistent with this conclusion. We accordingly decline to address this contention. *See Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 657 (Utah 1988).

Second, Mountain States argues that our reliance on *Highland Constr. Co. v. Stevenson*, 636 P.2d 1034 (Utah 1981), is misplaced. The main opinion cites *Highland* in support of our conclusion that NBA "prevailed" for purposes of the "net judgment" rule to the full extent of its recovery on the note, including the $59,587.16 voluntarily paid by Mountain States after NBA filed its counterclaim. Mountain States argues that because the full amount of the promissory note was deposited with the court *before* the counterclaim was filed, the rule established in *Highland* should not apply. We are not convinced. Even though the amount was deposited into court, NBA was no less deprived of the money it was owed than if Mountain States had merely kept the money in its own account. Either way, NBA was required to march into court, incur attorney fees to collect on the note, and defend itself against the claimed offsets. Accordingly, the locus of the withheld funds pending ultimate resolution is essentially irrelevant in determining whether NBA has prevailed.

**13.** Our initial opinion only shifted a few hundred dollars from NBA to Mountain States and left the parties' comparative degree of success essentially unchanged.

of a reasonable attorney fee as the prevailing party.

DAVIDSON and GREENWOOD, JJ., concur.